UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | Case No. 10-42843-MSH |
| DAVID M. FONTAINE | ) | |
| Debtor | ) | |
| DAVID M. NICKLESS | ) | |
| Plaintiff | ) | Adversary Proceeding |
| | ) | No. 11-04002 |
| v. | ) | |
| DAVID M. FONTAINE | ) | |
| Defendant | ) | |

**MEMORANDUM OF DECISION**

In this adversary proceeding David M. Nickless, the chapter 7 trustee in the main case, seeks a judgment denying a discharge under § 727 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, to the debtor, David M. Fontaine. This is a core proceeding over which I have jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(J). In his three-count complaint the trustee alleges that Mr. Fontaine omitted from his bankruptcy petition and supporting schedules and statements key facts concerning his financial condition prior to the bankruptcy petition date of June 3, 2010, that he concealed financial information from the United States trustee, and that he transferred property out of the estate subsequent to the petition date. According to the chapter 7 trustee, these acts and omissions justify denial of discharge under subsections (a)(4), (a)(3), and (a)(2)(B) of Bankruptcy Code § 727.

1

## Facts

At trial the debtor and his wife Margaret Guzman were the only witnesses. Based on their testimony and the agreed statement of facts submitted by the parties, I make the following findings of fact pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

- Mr. Fontaine lived with his wife, Ms. Guzman, at 10 Moore Avenue in Worcester, Massachusetts on the bankruptcy petition date.

- Between July 2009 and the petition date, Ms. Guzman was employed by the Commonwealth of Massachusetts and earned an annual salary of $129,000.

- Mr. Fontaine filed a lawsuit against Albert Surabian in the Worcester District Court Department of the Massachusetts Trial Court and Mr. Fontaine testified at trial that he recovered $15,000 from Mr. Surabian subsequent to filing the lawsuit. All this occurred within the year prior to the bankruptcy petition date.

- On July 9, 2009 Mr. Fontaine sold real property located at 38 Richmond Avenue in Worcester, Massachusetts to Marguerite T. O'Brien for consideration of $223,500. Mr. Fontaine realized $1,544.16 from the sale.

- On June 18, 2009 Mr. Fontaine sold two condominium units located at 1164 Main Street in Leicester, Massachusetts. Mr. Fontaine sold Unit 4 to Dennis Heise and Rachel Flogstad-Heise for consideration of $61,000 and Unit 5 to Cory Scott Dufault for consideration of $65,000. Mr. Fontaine realized $14,014 from the sale of the two condominium units.

- Mr. Fontaine was engaged in several businesses within six years of the bankruptcy petition date, including a construction business, a hair salon, and a horse racing enterprise.

- Subsequent to filing his bankruptcy petition, Mr. Fontaine transferred one of the two horses he owned on the bankruptcy petition date, a gelding, to George Brown for no consideration and without notice or court authority.

- Mr. Fontaine did not provide financial information as requested by the U.S. trustee in a letter dated September 1, 2010.

## Discussion

Discharge is the bulls-eye of bankruptcy and the embodiment of the fresh-start policy of the Bankruptcy Code. For this reason Rule 4005 of the Federal Rules of Bankruptcy Procedure places the burden of proof in an action objecting to a debtor's discharge on the objecting party. This burden is not easily satisfied. "A bankruptcy petition would be of little aid to debtors in need of a 'fresh start' if creditors could easily attack the granting of a discharge." *JP Morgan Chase Bank, N.A. v. Koss (In re Koss)*, 403 B.R. 191, 211 (Bankr. D. Mass. 2009) (quoting *Sprague, Thall & Albert v. Woerner (In re Woerner)*, 66 B.R. 964, 971 (Bankr. E.D. Pa. 1986)). "The reasons for denying a discharge to a bankrupt must be real and substantial, not merely technical and conjectural." *Boroff v. Tully* (*In re Tully*), 818 F.2d 106, 110 (1st Cir. 1987) (quoting *Dilworth v. Boothe*, 69 F.2d 621, 624 (5th Cir. 1934)).

Here, the trustee asserts that Mr. Fontaine failed to disclose in his schedules of assets and liabilities and statement of financial affairs accompanying his bankruptcy petition and additional statements, all signed under oath, the Surabian lawsuit, the transfers of the Worcester property and the Leicester condominiums, his former business enterprises, and Ms. Guzman's annual salary. The trustee urges that by virtue of these omissions Mr. Fontaine made materially false oaths with fraudulent intent within the scope of Bankruptcy Code § 727(a)(4). The trustee further asserts

3

that Mr. Fontaine has run afoul of § 727(a)(3) by failing to produce financial information as requested by the U.S. trustee and transgressed § 727(a)(2)(B) by transferring his gelding after the petition date without authority from the court.

Mr. Fontaine rejects the trustee's contention that the misstatements in his bankruptcy schedules and supporting documents establish fraudulent intent within the meaning of § 727(a)(4); that he concealed documents from the U.S. trustee within the meaning of § 727(a)(3); or that his post-petition transfer of the gelding was made with the intent to mislead or defraud creditors within the meaning of § 727(a)(2)(B).

As each count of the trustee's complaint focuses on a discrete ground for denial of discharge under Bankruptcy Code § 727(a), I will address them individually.

Section 727(a)(4)(A) provides, "[t]he court shall grant the debtor a discharge unless the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account." The burden lies with the trustee to demonstrate by a preponderance of the evidence that the debtor (1) knowingly and fraudulently, (2) made a false oath in or in connection with the case, (3) relating to a material fact. *In re Donahue*, 2011 WL 6737074, at *11 (BAP 1st Cir. 2011).

The Bankruptcy Appellate Panel for the First Circuit has held that "[a] debtor's Schedules and Statement of Financial Affairs are the equivalent of a verification under oath." *In re Warner*, 247 B.R. 24, 26 (BAP 1st Cir. 2000) (citing 28 U.S.C. § 1746).[1]  In *re Donahue*, 2011 WL

---

[1] The Bankruptcy Appellate Panel for the First Circuit in *In re Warner* cites its previous decision, *In re Grondin*, 232 B.R. 274 (BAP 1st Cir. 1999), where the panel observed that "[a] debtor's Schedules and Statement of Financial Affairs are unsworn declarations made under penalty of perjury and are, according to federal law [, 28 U.S.C. § 1746], the equivalent of a verification under oath." Since *In re Grondin*, the Bankruptcy Appellate Panel for the First Circuit has maintained this position. *See, e.g.*, *In re Donahue*, 2011 WL 6737074, at *11 (BAP 1st Cir. 2011).

6737074, at *11 (quoting *In re Warner*, 247 B.R. 24, 26 (BAP 1st Cir. 2000)). "[W]hen a debtor omits a transaction from his Statement of Financial [] Affairs, he has made a false oath. Misstatements in a debtor's Schedules and/or in the debtor's sworn testimony at the § 341 meeting also qualify as false oaths within the purview of § 727(a)(4)(A)." *In re Donahue*, 2011 WL 6737074, at *11. "Moreover, misrepresentations on the means test may be found to be false oaths with fraudulent intent." *In re Moreno*, 437 B.R. 40, 67 (1st Cir. BAP 2010).

A material fact under § 727(a)(4) is one that has a non-trivial effect upon the estate and the creditors. *In re Sullivan*, 444 B.R. 1, 8 (Bankr. D. Mass. 2011). The subject matter of a false oath is material, and thus sufficient to bar discharge, if it "bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of property." *In re Tully*, 818 F.2d at 111 (quoting *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984)). At least one bankruptcy court has held that "any omission of income from a debtor's statements is material." *In re Crumley*, 428 B.R. 349, 360 (Bankr. N.D. Tex. 2010).

The requirement that the false oath be "knowingly and fraudulently" made is met "if the debtor 'knows the truth and nonetheless willfully and intentionally swears to what is false.'" *In re Sullivan*, 444 B.R. at 8 (quoting *Gordon v. Mukerjee (In re Mukerjee)*, 98 B.R. 627, 629 (Bankr. D.N.H. 1989)). As the Court of Appeals for the First Circuit observed in *In re Tully*, "reckless indifference to the truth . . . has consistently been treated as the functional equivalent of fraud for purposes of § 727(a)(4)(A)." 818 F.2d at 112 (quotations omitted). "Even though courts will not construe an ignorant or inadvertent omission as evidence of fraudulent intent, reckless disregard may nonetheless be found based on the 'cumulative effect of a series of innocent mistakes.'" *In re*

5

*Koss*, 403 B.R. at 213. Ultimately, "[n]either the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight." *In re Tully*, 818 F.2d at 110.

The errors in Mr. Fontaine's statements under oath are manifold. Question 4 of the statement of financial affairs requests disclosure of "all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case." In his response to question 4, Mr. Fontaine failed to list the lawsuit against Albert Surabian in which he recovered $15,000.

Question 10 of the statement of financial affairs instructs a debtor to "[l]ist all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within two years immediately preceding the commencement of this case." Mr. Fontaine did not list the sale of the Worcester property from which he realized $1,544.16, nor did he list the sale of the Leicester condominium units from which he realized $14,014.00, all of which occurred within the year prior to his petition date.

Question 18 of the statement of financial affairs requests that an individual debtor "list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full- or part-time within six years immediately preceding the commencement of this case . . . ." The only business listed by Mr. Fontaine in response to question 18 was D&M Contracting. In the agreed statement of facts filed by the parties, it was agreed that Mr. Fontaine was engaged in several businesses within six years of his bankruptcy

6

filing. Based on his 2008 federal income tax return, which was admitted into evidence at trial, Mr. Fontaine owned a hair salon as well as race horses during 2008. In 2008, Mr. Fontaine took a deduction on his tax return of $5107 from his "Race Horse" business, which he offset against other business income earned during that year. Although Mr. Fontaine testified at trial that horse racing was only a hobby, his 2008 income tax return entirely undercuts the credibility of his testimony on this point.

Furthermore, Mr. Fontaine failed to include his wife's income in his schedules or supporting documents as required. Mr. Fontaine's wife, Ms. Guzman, testified at trial that she had earned an annual salary of $129,000 in the year immediately preceding the filing date. On schedule I Mr. Fontaine indicated that he was married but did not list his wife's income in the column where it was required. On his chapter 13 statement of current monthly income made under oath Mr. Fontaine entered the debtor's household size as "1" and failed to include his wife's income in the box designated for spouse's income even though he was married to and living with Ms. Guzman at the time of the petition. After conversion of his case, when completing the chapter 7 statement of current monthly income and means-test calculation, also made under oath, Mr. Fontaine again misrepresented his household size as "1" and failed to include his wife's income.

Each of the above errors in Mr. Fontaine's statements constitutes a false oath under § 727(a)(4)(A) and in light of the standard set forth by the Court of Appeals for the First Circuit in *In re Tully*, 818 F.2d at 111, each is material. The cumulative effect of Mr. Fontaine's failure to identify the Surabian lawsuit, his failure to list the transfers of the Worcester property and Leicester condominium units, his failure to include the full extent of his business activities and his

7

repeated failure to list his wife's income establishes beyond doubt Mr. Fontaine's reckless indifference to the truth and thus his fraudulent intent. The chapter 7 trustee has thus carried his burden to prove each element of § 727(a)(4)(A). As a result, Mr. Fontaine is not entitled to a discharge.

While further reconnoitering of the trustee's complaint would appear unnecessary, in the interest of creating a complete record I will address the trustee's remaining counts.

The chapter 7 trustee looks to Bankruptcy Code § 727(a)(3) as further support for his denial of discharge claim. Under § 727(a)(3) a discharge may be denied if "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information . . . from which the debtor's financial condition or business transactions might be ascertained." If the party seeking discharge denial can make such a showing, the burden shifts to the debtor to demonstrate that "such act or failure to act was justified under all of the circumstances of the case." *See In re Hegarty*, 400 B.R. 332, 341-42 (Bankr. D. Mass. 2008). Section 727(a)(3) does not explicitly refer to intent but it is obvious that "[c]oncealment involves a deliberate attempt to shield certain recorded information from detection and/or inspection." *In re Cacioli*, 285 B.R. 778, 782 (Bankr. D. Conn. 2002). *Black's Law Dictionary* defines concealment as "[t]he act of refraining from disclosure . . . . The act of removing from sight or notice; hiding." BLACK'S LAW DICTIONARY 327 (9th ed. 2009). Concealment also presupposes the existence of that which has been concealed. In *In re Lipp*, the court noted that "the Trustee would have the Court infer that: (1) the requested documents, the subject of his investigation, must have been in the custody or control of the Debtor and (2) the documents were therefore concealed because they have not been produced." 2009 WL 2032127, at *4 (Bankr. D. Mass. July 6, 2009). The court concluded, "[b]ut these

8

inferences, as well as the concept of concealment itself, require first that the documents actually exist." *Id.*

Here the chapter 7 trustee's § 727(a)(3) claim is predicated on Mr. Fontaine's failure to respond to the September 1, 2010 letter from the U.S. trustee's office, requesting financial information from the debtor. The documents requested by the U.S. trustee included pay stubs, earning statements, tax returns, credit card statements, bank statements, copies of loan guarantees, mortgage applications and insurance policies. The letter was addressed to Mr. Fontaine's counsel but not to Mr. Fontaine. At trial, Mr. Fontaine stated that he did not remember receiving the U.S. trustee's letter.

In light of the agency relationship between attorney and client the receipt of a letter by a debtor's attorney generally constitutes constructive notice to the debtor. *See Ford Motor Credit Co. v. Weaver*, 680 F.2d 451, 458 (6th Cir. 1982). For purposes of the present action, however, constructive notice is not enough. Mr. Fontaine must have had actual notice of the U.S. trustee's letter because concealment under § 727(a)(3) requires deliberate action. Since Mr. Fontaine has testified that he did not recall receiving the letter from the U.S. trustee, since the letter was addressed only to his counsel, and since the chapter 7 trustee has offered no evidence that Mr. Fontaine originally had the requested documents in his possession or that he actively withheld the documents, the trustee has not satisfied his burden of proof as to his claim under § 727(a)(3).

In the third count of his complaint the trustee seeks denial of discharge under Bankruptcy Code § 727(a)(2)(B) which provides, "[t]he court shall grant the debtor a discharge, unless the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed,

9

or has permitted to be transferred, removed, destroyed, mutilated, or concealed property of the estate, after the date of the filing of the petition . . . ." The trustee must show by a preponderance of the evidence that (1) the debtor transferred, removed, destroyed, mutilated, or concealed (2) property of the estate (3) postpetition (4) with intent to hinder, delay or defraud a creditor. *In re Watman*, 301 F.3d 3, 7 (1st Cir. 2002). Actual intent is required and such intent may be determined by "looking to the circumstances surrounding the transfer." *Id.* at 8. In *In re Watman*, the Court of Appeals for the First Circuit identified seven indicia of fraudulent intent:

> (1) insider relationships between the parties; (2) the retention of possession, benefit or use of the property in question; (3) the lack or inadequacy of consideration for the transfer; (4) the financial condition of the party sought to be charged both before and after the transaction at issue; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; (6) the general chronology of the events and transactions under inquiry; and (7) an attempt by debtor to keep the transfer a secret.

*Id.* (citations omitted).

As grounds for a denial of discharge pursuant to § 727(a)(2)(B), the trustee relies on Mr. Fontaine's post-petition transfer of his gelding for no consideration and his failure to disclose or obtain court authority for the transfer. Although the transfer wasn't disclosed and lacked consideration, these facts alone do not support a finding of fraudulent intent within the meaning of § 727(a)(2)(B). It is possible, for example, that Mr. Fontaine gave the horse away because it had little or no value and he hadn't realized he needed court authority to do so. The testimony of Mr. Fontaine concerning this transaction does not sufficiently elucidate his intent so as to support the trustee's burden to prove that his intent was to defraud. I find that the trustee failed to establish Mr. Fontaine's fraudulent intent in transferring the gelding and thus the trustee's claim under § 727(a)(2)(B) must fail.

Because, however, the trustee has established that Mr. Fontaine made false oaths with fraudulent intent concerning material financial information, the trustee has met his burden under Bankruptcy Code § 727(a)(4)(A) and the debtor's discharge will be denied.   A separate order will issue.

At Worcester, Massachusetts this 23rd day of March, 2012.

By the Court,

*[signature]*

Melvin S. Hoffman
U.S. Bankruptcy Judge

Counsel Appearing:    David M. Nickless, Trustee
                     Nickless & Philips, P.C.
                     Fitchburg, MA

                     Daniel I. Cotton
                     Wolfson, Keenan, Cotton & Cotton
                     Worcester, MA
                     For the Debtor